UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JORDAN ESKEW, | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | Case No. 1:25-cv-00804-ADA |
| | § | |
| STONE HILTON PLLC, | § | |
| CHRISTOPHER HILTON, AND JUDD | § | |
| STONE, | § | |
|     Defendants. | § | |

## **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE**

TO THE HONORABLE U.S. DISTRICT JUDGE:

Plaintiff Jordan Eskew files this response to Defendants' motion to strike, and in support thereof, would show the Court as follows:

### **Summary of Argument**

1. The standard for striking allegations from a pleading is not "This email makes us look really bad." Rather, a motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy. The allegations Defendants want stricken are integral to Plaintiff's claims. The TWC agreed and relied extensively on the pattern of sexual harassment described by the Webster email, illustrating the close connection between the Webster email and this lawsuit.

2. Although Defendants object to the inclusion of the Webster email in this lawsuit, they themselves have filed the Webster email—not once but twice—in their (baseless) lawsuit against Webster et al., *Stone Hilton PLLC et al. v. Webster et al.*, Civil Action No. 1:25-cv-00983, in the United States District Court for the Western District of Texas, Austin Division. Accordingly,

Defendants have waived any complaint about and are estopped from complaining about the filing/inclusion of the Webster email in this lawsuit.

3. Plaintiff is entitled to present evidence that Defendants engaged in a pattern of illegal sexual harassment and intentional infliction of emotional distress against both Plaintiff and others, which pattern is described by the Webster email and upon which pattern of sexual harassment the TWC relied in determining that Stone Hilton PLLC sexually harassed Plaintiff. This pattern is relevant to show notice, motive, intent, and absence of mistake.

4. Documents like the Webster email are routinely admitted at trial as a public records exception to the hearsay rule. Defendants have failed to offer any indicia of untrustworthiness that would result in the exclusion of the Webster email.

5. Defendants make several false, irrelevant, and unsupported allegations, including that (a) Webster drafted the email to retaliate against them, (b) Plaintiff included the Webster email for media attention, and (c) Plaintiff included the Webster email "for the purpose of slinging mud on behalf of Webster." Defendants offer no evidence of these claims because none exists.

6. Plaintiff filed the suit, amended the suit, and served the suit to obtain legal relief. Period. Although Plaintiff and her counsel are constitutionally permitted to communicate with the media, neither Plaintiff nor her counsel have done so about this lawsuit at any time in any form whatsoever. Defendants seem to be projecting onto Plaintiff their own conduct, as they have used their extensive media contacts to respond aggressively to this lawsuit. Plaintiff included the Webster email not "for the purpose of slinging mud on behalf of Webster"—Plaintiff's counsel has never met or communicated with Webster at any time on any subject. If Defendants had evidence of this, they would have attached it.

7. Defendants' assertion that "all of Webster's allegations that were not asserted in Eskew's Charge were time-barred at the time of Webster's email, in that they all occurred over 300 days before December 2, 2024, with no Charge filed" is a red herring. As discussed in detail below, Defendants use the wrong time window, calculating 300 days from the Webster email and then saying nothing happened in that window. 300 days prior to the Webster email was February 6, 2024, well after the Stone Hilton PLLC employees returned to the OAG and Stone and Hilton were fired, i.e., well after any of the sexually harassing conduct at Stone Hilton PLLC occurred. All of the conduct Plaintiff complained about in her TWC Charge, filed on April 2, 2024, occurred within the 300 days prior to the TWC Charge.

8. More importantly, Stone's sexual harassment of female interns at Senator Ted Cruz's office and his claiming to employees of the OAG that he has been violent with sex workers will be admissible at trial to show Defendants' notice, motive, intent, and absence of mistake.

9. Also, the statute of limitations for intentional infliction of emotional distress is two years, not 300 days, and any extreme and outrageous conduct determined not to be sexual in nature will support that claim.

10. In summary, the entire investigation by the OAG, and the entire Webster email describing that investigation, is related to Plaintiff's claims in this lawsuit. Defendants' motion to strike is therefore baseless and should be denied.

**Procedural Background**

11. On May 27, 2025, Plaintiff brought this action (1) against all Defendants for unpaid wage compensation and other relief under the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 201, *et seq*.; (2) against all Defendants for intentional infliction of emotional distress seeking mental anguish and punitive damages; and (3) against Stone Hilton PLLC breach of

contract, promissory estoppel, and quantum meruit, seeking actual damages and reasonable attorney fees and costs. Clerk's Doc. No. 1.

12. On June 16, 2025, after receiving a right-to-sue letter from the TWC and a finding in her favor by the TWC that she was subjected to sexual harassment by Defendant Stone Hilton PLLC, Plaintiff amended her lawsuit to add claims of sexual harassment under the Texas Labor Code against all Defendants. Clerk's Doc. No. 4.

13. Plaintiff has filed a motion for leave to amend her lawsuit to add claims against Defendants for hostile work environment based on race under section 1981 of the Civil Rights Act of 1866. Clerk's Doc. No. 14.

14. Defendants have filed a motion to strike (Clerk's Doc. No. 6) paragraphs 44 and 45 of and Exhibit 5 to Plaintiff's first amended complaint, i.e., the allegations related to the Webster email.

15. The Webster email describes:

(a) Plaintiff's report to OAG of sexual harassment and intentional infliction of emotional distress inflicted on her and other employees of Stone Hilton PLLC by Defendants, showing a pattern of sexual harassment and (non-sexual, non-racial) intentional infliction of emotional distress by Defendants;

(b) Plaintiff's report to OAG of hostile work environment based on race inflicted on her by Defendants;

(c) A report to OAG by another female employee of Stone Hilton PLLC of sexual harassment and (non-sexual, non-racial) intentional infliction of emotional distress inflicted on her and other employees of Stone Hilton PLLC by Defendants, showing a pattern of sexual harassment and intentional infliction of emotional distress by Defendants;

(d) Other acts of sexual harassment by Stone against employees in other workplace, including sexual harassment of female interns at Senator Ted Cruz's office, showing a pattern of sexual harassment by Stone that Stone Hilton PLLC knew about and should have prevented but failed to do so;

(e) Other acts of sexual harassment or intentional infliction of emotional distress by Stone against other employees in the workplace, including claiming to employees of the OAG that he has been violent with sex workers (unclear if the violent-with-sex-worker comments were made to female employees only or male and female employees; also unclear if Hilton was aware of this conduct), showing a pattern of sexual harassment or intentional infliction of emotional distress by Stone that Stone Hilton PLLC knew about and should have prevented but failed to do so;

(f) The OAG's investigation of the allegations of Plaintiff and the other female employee of Stone Hilton PLLC;

(g) Stone and Hilton's admissions to both Webster and Hon. Grant Dorfman that all of the allegations against them by Plaintiff and the other female employee of Stone Hilton PLLC were true, "but it was okay because we were at a private law firm"; and

(h) The OAG's decision to terminate Stone and Hilton based on all of the information above.

(i) The truthfulness or lack thereof of Defendant Stone.

## Argument and Authorities

**A. Motions to strike are disfavored and should be used sparingly, only when the pleading to be stricken has no possible relation to the controversy.**

16. Federal Rule of Civil Procedure 12(f) provides that a district court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *See Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir .1962) (holding "that the action of striking a pleading should be sparingly used by the courts" and that "motion[s] to strike should be granted only when the pleading to be stricken has no possible relation to the controversy") (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).

17. Here, as discussed below, every portion of the Webster email has a close connection to the controversy. The Court may later decide not to admit some of this evidence at trial, but that is not the standard for a motion to strike. Paragraphs 44 and 45 and Exhibit 5 to Plaintiff's first

amended complaint have a *close* connection to the claims in this lawsuit. That is precisely why Defendants are so desperate for the Court to strike them.

**B. Defendants have failed to allege which portions of the Webster email have no possible relation to the controversy and have therefore waived the argument that the paragraphs and exhibit should be stricken.**

18. Defendants have failed even to identify which portions of the Webster email have no possible relation to the controversy here, much less explain why such portions have no possible relation to the controversy. "Arguments that are insufficiently addressed in the body of the brief, however, are waived." *Am. Stewards of Liberty v. Dep't of the Interior*, 370 F. Supp. 3d 711, 735 (W.D. Tex. 2019); FED. R. CIV. P. 7(b)(1)(B) (requiring movant to state with particularity the grounds for seeking the order); W.D. Tex. Local Rule CV-7(C). Accordingly, Defendants' argument that paragraphs 44 and 45 and Exhibit 5 should be stricken is waived. For this reason alone, Defendants' motion should be denied.

**C. Defendants make many false, unsubstantiated, and irrelevant allegations.**

19. Instead of identifying which portions of the Webster email have no possible relation to the controversy here or explain why they contend such portions have no possible relation to the controversy, Defendants argue the Court should strike paragraphs 44 and 45 and Exhibit 5 from Plaintiff's complaint because (a) Webster's motive in writing the email was to retaliate against Defendants; (b) the Webster email was "clearly asserted for the sole purpose of generating inflammatory media attention," and (c) the Webster email was included "for the purpose of slinging mud on behalf of Webster," all of which are false, irrelevant, and unsupported by any evidence whatsoever. Clerk's Doc. No. 6, p. 4. The standard is not whether an allegation is "retaliatory" or was "clearly asserted for the sole purpose of generating inflammatory media

attention"—it is whether the allegation has any possible connection to the case, which, as explained below, every piece of the Webster email does.

20. Responding to points (a), (b), and (c) in the paragraph above, contrary to Defendants' allegations, Plaintiff filed the suit, amended the suit, and served the suit to obtain legal relief for Defendants' illegal conduct. Period. Further, though it is Plaintiff's constitutional right to do so, unlike Defendants and their representatives, who have used their extensive media contacts to respond aggressively to this lawsuit, neither Plaintiff nor her counsel have communicated with the media about this lawsuit at any time in any form whatsoever. Finally, Plaintiff included the Webster email not "for the purpose of slinging mud on behalf of Webster"—Plaintiff's counsel has never met or communicated with Webster at any time on any subject—but because every portion of the Webster email has a close connection to this case.

**D. Every piece of the Webster email has a strong relation to the controversy here.**

21. Every piece of the Webster email has a strong relation—not merely a possible relation—to the controversy here. Paragraphs 44 and 45 of Plaintiff's first amended complaint are related to:

- how the Webster email was (lawfully) obtained via a public records request (relation to the claim by Defendants that the email was improperly released and not a public record);

- allegations of wrongful conduct made against Defendants Stone and Hilton by two female employees of Stone Hilton PLLC, including allegations of sexual harassment, intentional infliction of emotional distress, and racial slurs (relation to Plaintiff's sexual harassment, intentional infliction of emotional distress, and section 1981 claims);

- Stone's pattern of abusing employees, causing these employees severe emotional distress, including fear for their safety (relation to Plaintiff's claims of sexual harassment and intentional infliction of emotional distress);

- Hilton's pattern of enabling and refusing to put a stop to Stone's pattern of abusing employees (relation to Plaintiff's sexual harassment, intentional infliction of emotional distress, and section 1981 claims);

- witnesses to Defendants' acts of sexual harassment, intentional infliction of emotional distress, and racial slurs (relation to Plaintiff's sexual harassment, intentional infliction of emotional distress, and section 1981 claims);

- OAG's investigation of the allegations of wrongful conduct made against Defendants Stone and Hilton by two female employees, including allegations of sexual harassment, intentional infliction of emotional distress, and racial slurs (relation to Plaintiff's sexual harassment, intentional infliction of emotional distress, and section 1981 claims);

- Stone's and Hilton's admissions—to two different people—that the allegations of wrongful conduct made against them by the two female employees did indeed occur (relation to Plaintiff's sexual harassment, intentional infliction of emotional distress, and section 1981 claims);

- identity of the two witnesses to whom Stone and Hilton admitted that the allegations of wrongful conduct made against them by the two female employees did indeed occur (relation to Plaintiff's sexual harassment, intentional infliction of emotional distress, and section 1981 claims);

- Actions taken by the OAG to prevent further harm to the two female employees (relation to Plaintiff's sexual harassment, intentional infliction of emotional distress, and section 1981 claims);

- Stone's history of sexually harassing women at Senator Ted Cruz's office (relation to Plaintiff's claims of sexual harassment);

- Stone's claim that he used to be violent with sex workers (relation to Plaintiff's claims of sexual harassment or intentional infliction of emotional distress, as well as Stone's admission that he indeed engaged in the wrongful acts described by the two female employees);

- Stone's false claim that he had a stalker in order to get security and a special parking lot (relation to Stone's truthfulness and thus all claims and defenses); and

- Stone's pattern of not being truthful (relation to all claims and defenses);

22. In employment cases, other instances of discrimination or harassment are admissible to prove notice, plan, motive, and absence of mistake, and intent, even if these instances occurred

outside the applicable statute of limitations.[1] None of the incidents Plaintiff complained about in her TWC Charge occurred outside the statute of limitations; Plaintiff does not know if Stone's sexual harassment of female interns or violent-with-sex-workers comments occurred outside any

---

[1] *See, e.g., Alaniz v. Zamora-Quezada,* 591 F.3d 761, 775 (5th Cir. 2009) (evidence that defendant in former employee's sex discrimination action had harassed other parties, as well as two non-party witnesses, was admissible for purposes other than to show "propensity," including to demonstrate plan, motive, or absence of mistake); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1287 (11th Cir. 2008) (in racial discrimination action, employer was not entitled to instruction directing jury to disregard "me too" evidence presented by plaintiff regarding termination of four black employees other than plaintiff; evidence was admissible as relevant to plaintiff employee's claim of hostile work environment, to rebut employer's "good faith" defense, and as probative of intent); *Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995) (evidence of employer's sexual harassment of other female employees could be used to prove his motive or intent in discharging plaintiff; sexual harassment of others, if shown to have occurred, was relevant and probative of employer's general attitude of disrespect toward female employees, and his sexual objectification of them); *Jackson v. Potter*, 587 F. Supp. 2d 1179, 1183–84 (D. Colo. 2008) (evidence of other complaints filed against employee's supervisor was admissible to show motive, intent, and a pattern of conduct in employee's discrimination action, and probative value of such evidence was not substantially outweighed by danger of unfair prejudice); *Gaffney v. Dep't of Info. Tech. & Telecomm's*, 579 F. Supp. 2d 455, 460 (S.D. N.Y. 2008) (unsuccessful job applicant's testimony regarding supervisors' discriminatory and retaliatory conduct was relevant to other unsuccessful applicants' claim that employer had policy or practice of discrimination and retaliation and thus was admissible in other unsuccessful applicants' § 1983 action against supervisors, despite supervisors' contention that testimony was prohibited "me, too" evidence); *Nakis v. Potter*, 422 F. Supp. 2d 398, 410 (S.D. N.Y 2006) (time-barred conduct in employment discrimination claim may still be offered as evidence of discriminatory intent to support timely discrimination claims); *Hernandez Loring v. Universidad Metropolitana*, 190 F. Supp. 2d 268, 271 (D. Puerto Rico 2002) (evidence that male professor sexually harassed female students was admissible in female professor's action against university for quid pro quo sexual harassment to demonstrate that there was general atmosphere of sexual hostility at workplace and that university knew or should have known about it); *Lowery v. Carrier Corp.*, 953 F. Supp. 151, 158 (E.D. Tex. 1997) (even if alleged instances of sexual harassment by supervisor, which occurred outside 300–day time period for filing charge of discrimination in violation of Title VII, were not part of same continuing violation which allegedly occurred inside such time period so as to be actionable, they were admissible as relevant background evidence for employee's claims involving alleged incidents that occurred inside time period); *Webb v. Hyman*, 861 F. Supp. 1094, 1111 D.D.C. 1994 (evidence of allegations of harassment by supervisor towards other women was admissible in government employee's sexual harassment suit against supervisor and government on issues of motive, intent and government's notice of harassment, even if incidents complained of by other women were remote in time from harassment suffered by employee); *see also Borg-Warner Protective Servs Corp. v. Flores*, 955 S.W.2d 861, 869 (Tex. App.—Corpus Christi 1997, no pet.) (punitive damage award of $2,225,000 to former employee in action against employer, alleging sexual harassment and related intentional torts, was not excessive, and thus, was not unconstitutional, where employee sought to punish employer and supervisor for supervisor's commission of highly reprehensible pattern of conduct).

applicable statute of limitations, but even if they did, evidence of this conduct is admissible to show notice, plan, motive, absence of mistake, and intent. *See* note 1, *supra*.

23. In support of her claims of sexual harassment against all Defendants, Plaintiff will seek to introduce evidence of the sexual harassment inflicted upon Plaintiff and other female employees of Stone Hilton PLLC, including the oral sex and the pedophilic asteroid rape fantasy comments made by Defendant Stone and not stopped or corrected by Defendant Hilton, all of which allegations were admitted by Stone and Hilton to Webster and Judge Dorfman at the OAG. This evidence is admissible to show notice, plan, motive, absence of mistake, and intent. *See* note 1, *supra*.

24. In support of her claims of sexual harassment against Stone Hilton PLLC and Stone individually, in addition to the evidence in the paragraph above, Plaintiff will seek to introduce evidence that Stone sexually harassed female interns at Senator Ted Cruz's office. Evidence of this conduct is admissible to show notice, plan, motive, absence of mistake, and intent, even if it occurred prior to 300 days before Plaintiff filed her TWC Charge. *See* note 1, *supra*.

25. If Hilton was aware of Stone's sexual harassment of female interns at Senator Cruz's office and did nothing to prevent Stone from engaging in similar conduct at Stone Hilton PLLC, this evidence would be relevant to the sexual harassment claims against Hilton individually, to prove notice, plan, motive, absence of mistake, and intent, even such awareness was prior to 300 days before Plaintiff filed her TWC Charge. *See* note 1, *supra*. These questions will be explored by Plaintiff in discovery.

26. With regard to Stone's comments to employees of the OAG that he has been violent with sex workers, if he targeted these comments to females only, this evidence may show a pattern of sexual harassment by Stone and Stone Hilton PLLC, which knew about and should have

prevented further sexually harassing conduct by Stone but failed to do so. This evidence is admissible to show notice, plan, motive, absence of mistake, and intent, even if it occurred prior to 300 days before Plaintiff filed her TWC Charge. *See* note 1, *supra*. (If the violent-with-sex-workers comments were targeted to males and females, this evidence may show a pattern of intentional infliction of emotional distress by Stone and Stone Hilton PLLC, which knew about and should have prevented further extreme and outrageous conduct by Stone but failed to do so. This evidence would be admissible to show notice, plan, motive, absence of mistake, and intent, even if it occurred prior to the two-year statute of limitations for intentional infliction of emotional distress. *See* note 1, *supra*.) These questions will be explored by Plaintiff in discovery.

27. If Hilton was aware of the violent-with-sex-workers comments and did nothing to prevent Stone from engaging in similar conduct at Stone Hilton PLLC, this evidence will also be relevant to Plaintiff's claims of sexual harassment (if the comments were targeted to females only) or intentional infliction of emotional distress (if the comments were targeted to males and females) against Hilton individually. This evidence would be admissible to show notice, plan, motive, absence of mistake, and intent, even if it occurred prior to the applicable statute of limitations. *See* note 1, *supra*. These questions will be explored by Plaintiff in discovery.

28. In support of her claims of intentional infliction of emotional distress against all Defendants, Plaintiff will seek to introduce evidence of (a) Defendants' extreme and outrageous statement to its employees that in this firm, there are no rules; you can say whatever slurs you want; (b) Defendants' extreme and outrageous berating of Plaintiff, including asking her to cry in front of the other employees of Stone Hilton PLLC; (c) Stone's extreme and outrageous screaming at Plaintiff about an expense report; (d) Stone's extreme and outrageous screaming at female employees, who worked downstairs, from the upstairs railing; (e) Stone's extreme and

outrageous berating of Plaintiff for not making his alcoholic drink properly; and (f) Stone's extreme and outrageous threatening to fire any employee of Stone Hilton PLLC who commented about his drinking. This evidence is admissible to show notice, plan, motive, absence of mistake, and intent. *See* note 1, *supra*.

29. In support of her claims of intentional infliction of emotional distress against Stone Hilton PLLC and Stone individually, in addition to the evidence above, Plaintiff will seek to introduce evidence that Stone told employees of the OAG that he has been violent with sex workers. This evidence is admissible to show notice, plan, motive, absence of mistake, and intent, even if it occurred prior to the two-year statute of limitations for intentional infliction of emotional distress. *See* note 1, *supra*. (As stated above, if Stone targeted these comments to females only, this evidence may show a pattern of sexual harassment by Stone and Stone Hilton PLLC, which knew about and should have prevented further sexually harassing conduct by Stone but failed to do so. If the violent-with-sex-workers comments were targeted to males and females, this evidence may show a pattern of intentional infliction of emotional distress by Stone and Stone Hilton PLLC, which knew about and should have prevented further extreme and outrageous conduct by Stone but failed to do so.) These questions will be explored by Plaintiff in discovery.

30. If Hilton was aware of these comments and did nothing to prevent Stone from engaging in similar conduct at Stone Hilton PLLC, it will be relevant Plaintiff's claims of sexual harassment (if the comments were targeted to females only) or intentional infliction of emotional distress (if the comments were targeted to males and females) against him individually. Any such awareness would be admissible to show notice, plan, motive, absence of mistake, and intent,

even if it occurred prior to the applicable statute of limitations. *See* note 1, *supra.*. These questions will be explored by Plaintiff in discovery.

31. Plaintiff herself redacted from the Webster email statements that illustrate a pattern of intentional infliction of emotional distress in the workplace by Defendant Stone and Stone Hilton PLLC, including that Stone bragged to employees of the OAG that he is a diagnosed sociopath. Stone Hilton PLLC knew about this extreme and outrageous conduct and should have prevented further extreme and outrageous conduct by Stone but failed to do so. This evidence is admissible to show notice, plan, motive, absence of mistake, and intent, even if it occurred outside the two-year statute of limitations for intentional infliction of emotional distress. *See* note 1, *supra*. These questions will be explored by Plaintiff in discovery.

32. If Hilton was aware of Stone bragging to employees of the OAG that he is a diagnosed sociopath and did nothing to prevent Stone from engaging in further extreme and outrageous conduct at Stone Hilton PLLC, this evidence will be relevant to the claims of intentional infliction of emotional distress against him individually. Any such evidence would be admissible to show notice, plan, motive, absence of mistake, and intent, even if it occurred outside the two-year statute of limitations for intentional infliction of emotional distress. *See* note 1, *supra*. These questions will be explored by Plaintiff in discovery.

**E. The TWC relied extensively on the Webster email, illustrating the close connection between the Webster email and this lawsuit.**

33. In its determination that Stone Hilton PLLC sexually harassed Plaintiff, the TWC relied extensively on the Webster email, illustrating the close connection between the Webster email and this lawsuit. The TWC's reliance on the Webster email includes the following:

(a) "Stone admitted that the allegations were true. Evidence shows that Stone did make the [sexually harassing] comment [to Plaintiff], and that Christopher Hilton was present when it was made. . . ."

(b) "There are several additional factual allegations uncovered during the OAG's internal investigation that corroborate Stone 'is willing to sexually and physically intimidate women that work for him.'" [Plaintiff is not clear if this statement refers to the pedophilic asteroid rape fantasy comments made to another female employee of Stone Hilton PLLC; Stone's sexual harassment of female interns at Senator Ted Cruz's office; and/or telling employees of the OAG that he has been violent with sex workers. Plaintiff is also not clear if the comments Stone made to employees of the OAG that he was violent with sex workers were made to female employees or to both male and female employees.]

(c) "Corroborating evidence from an OAG email describes that when Judd Stone was confronted with the allegations against him, he admitted that all the allegations were true and that the actions described by the two females did indeed happen."

Exh. 7 to Plaintiff's first amended complaint.

**F. Documents like the Webster email are routinely admitted at trial as a public records exception to the hearsay rule.**

34. Investigation reports of sexual harassment allegations made to a governmental employer such as the Webster email are routinely admitted at trial as a public records exception to the hearsay rule. *See, e.g., Rodriguez v. City of Houston*, 250 F.Supp.2d 691, 700 n.2 (S.D. Tex. 2003) (report by police department's internal affairs division regarding investigation into

officer's complaints of sexual harassment was admissible under public records exception to hearsay rule). Absent any demonstration of untrustworthiness by Defendants under Federal Rule of Evidence 803(8), which they have failed to do here, the investigation report should be admitted at trial.

35. It is almost as if Defendants are desperate to exclude the Webster email from being admitted into evidence and believe that convincing the Court to strike it from Plaintiff's first amended complaint advances Defendants toward that goal. It does not.

**G. Defendants have failed to supply any legal authority to support their position.**

36. None of the caselaw supplied by Defendants provides any authority that would support their position here. Needless to say, the facts of this case—including Defendants' admissions of their wrongful conduct at Stone Hilton PLLC to two different people associated with the OAG, including sexual harassment, intentional infliction of emotional distress, and racial slurs; the public records documentation of that investigation, including Defendants' admissions that all of the allegations were true, "but it was okay because we were at a private law firm"; and Plaintiff receiving that documentation via an open records request—are unique. Accordingly, the caselaw supplied by Defendants fails to provide any authority for the circumstances here.

**H. The 300-day argument is a red herring.**

37. Defendants' assertion that "all of Webster's allegations that were not asserted in Eskew's Charge were time-barred at the time of Webster's email, in that they all occurred over 300 days before December 2, 2024, with no Charge filed" is a red herring. Notice the cute little trick Defendants try to perform here: they calculate 300 days from the Webster email and say nothing happened in that window. That's the wrong window. 300 days prior to the Webster email was February 6, 2024, well after the Stone Hilton PLLC employees returned to the OAG and Stone and Hilton were fired, i.e., well after any of the sexually harassing conduct at Stone

Hilton PLLC occurred. All of the conduct that Plaintiff complained about in her TWC Charge, filed on April 2, 2024, occurred within the 300 days prior to the TWC Charge. Further, and unfortunately for Defendants, the law allows Plaintiff to introduce evidence of other instances of sexually harassing conduct that occurred prior to the 300 days before Plaintiff filed her TWC Charge, including Stone's sexual harassment of female interns at Senator Ted Cruz's office and his claiming to employees of the OAG that he has been violent with sex workers. *See* note 1, supra. Also, the statute of limitations for intentional infliction of emotional distress is two years, not 300 days, and any extreme and outrageous conduct that is determined not to be sexual in nature will support that claim.

**I. Defendants themselves have (twice) filed the Webster email in another suit, so they are estopped from and have waived the right to complain about its inclusion in this lawsuit.**

38. In their motion to strike, Defendants fail to mention that they themselves filed—not once, but twice—a copy of the Webster email in *Stone Hilton PLLC et al. v. Webster et al.*, Civil Action No. 1:25-cv-00983, in the United States District Court for the Western District of Texas, Austin Division. Accordingly, they are legally estopped from and have waived the right to complain about its inclusion here.

**Request for Relief**

For these reasons, Plaintiff asks the Court to deny Defendants' motion to strike (Clerk's Doc. No. 6). Plaintiff further requests all other just relief.

Respectfully submitted,

FROST DOMEL PLLC
Emily Frost
State Bar No. 24036601
2499 S. Capital of Texas Hwy
Suite B-203
Austin, Texas 78746
(512) 640-5501
emily@frostdomel.com

By: _____
    Emily Frost

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that on August 19, 2025, a true and correct copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following:

Kimberly R. Miers
Texas Bar No. 24041482
kmiers@littler.com
Melinda J. Wetzel
Texas Bar No. 24115637
mwetzel@littler.com
LITTLER MENDELSON, P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701
Telephone: 512.982.7250
Facsimile: 512.982.7248

**ATTORNEYS FOR DEFENDANTS**

_____
Emily Frost

ATTORNEYS FOR PLAINTIFF