**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JORDAN ESKEW,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:25-cv-00804-ADA** |
| **STONE HILTON PLLC,** | § | |
| **CHRISTOPHER HILTON, AND JUDD** | § | |
| **STONE,** | § | |
| **Defendants.** | § | |

<u>**DEFENDANTS' RULE 11 MOTION FOR SANCTIONS**</u>

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, Defendants Stone Hilton PLLC, Christopher Hilton, and Judd Stone move this Court to order sanctions against Plaintiff and her counsel for refusing to withdraw her implausible hostile work environment claim under 42 U.S.C. § 1981, despite knowing that the claim is factually and legally baseless under existing law. Plaintiff appears to be pursuing this frivolous claim solely for the improper purpose of harassing Defendants and needlessly increasing the cost of litigation.

Plaintiff pleads only one allegation in support of her newly asserted race-based hostile work environment claim: that "around July 17, 2023, Plaintiff was subjected to unwelcome harassment" when "Judd Stone told Plaintiff that she is 'white trash' because she was wearing turquoise earrings." ECF No. 29, ¶ 98. This single isolated incident is legally insufficient to state a claim for race-based hostile work environment against Defendants, especially in light of the fact that Defendants Stone and Hilton are white, like Plaintiff.[1]

---

[1] *See e.g., McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 460 (5th Cir. 2019) (noting, "[O]n numerous occasions, this court has held that discrimination is less likely when the supervisor is in the same protected class as the plaintiff.") (citing *Kelly v. Costco Wholesale Corp.*, 632 F. App'x 779, 783 (5th Cir. 2015) (stating "[The plaintiff's] membership in the same protected class as [the supervisor] bolsters the inference that age discrimination was not the reason for his termination."); *Donald v. Plus4 Credit Union*, 2017 WL 3235659, at *9 (S.D.

Under controlling Fifth Circuit precedent, isolated offhand comments, discourtesy, and rudeness of this sort do not rise to the level of severe or pervasive conduct.[2] Further, Plaintiff's attempt to equate the phrase "white trash" with the N-word is offensive and not supported by Fifth Circuit precedent, which describes the N-word as "probably the most offensive word in English." *Woods v. Cantrell*, 29 F.4th 284, 285–86 (5th Cir. 2022) (citations omitted). Plaintiff admits that her entire race-based hostile work environment claim rests solely on a single, isolated comment about earrings. *See* Ex. A at 4 (admitting that "The series of alleged events described in Paragraph 26 of your Complaint [ECF No. 29] is the only instance of race-based harassment you claim to have been subjected to while employed at Stone Hilton PLLC."). Because Plaintiff's race-based hostile work environment claim contradicts existing precedent, it is therefore objectively without merit, violates Rule 11, and warrants sanctions.

## I.    FACTUAL & PROCEDURAL BACKGROUND

Plaintiff worked for Defendant Stone Hilton as its Office Manager for approximately four months, from June through September 2023. *See* ECF No. 29-2 (listing Plaintiff's "Position" as "Office Manager"). On or about March 28, 2024, Plaintiff and her counsel filed a Charge of Discrimination with the Texas Workforce Commission ("TWC") alleging sexual harassment. *See* ECF No, 29, ¶ 46 ("Plaintiff filed a sexual harassment charge at the [TWC] against Defendants."); ECF No. 29-5 at 2 ("Jordan Eskew, the Charging Party, filed a complaint with the [TWC] on or

---

Tex. Jul. 31, 2017) (holding, "Here, [CEO] is of the same protected class as [plaintiff] and was the same person who hired and fired her, generating a rebuttable inference that racial discrimination was not the employer's motivating factor."); *Thomas v. Group 1 Auto., Inc.*, No. CV H-23-1416, 2025 WL 19108, at *4 (S.D. Tex. Jan. 2, 2025) (noting, "[I]t is also undisputed that General Manager Cooper, who was involved in the decision to terminate [plaintiff], is African American, which undermines an inference that [plaintiff's] termination was racially motivated.").

[2] *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999) (holding, "[d]iscourtesy or rudeness, 'offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in 'terms and conditions of employment.'") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

about March 28, 2024."). Plaintiff's Charge does not include any allegation of race discrimination. Plaintiff filed suit on May 27, 2025, asserting unpaid wages and overtime, intentional infliction of emotional distress, breach of contract, promissory estoppel, and quantum meruit. ECF No. 1. Again, Plaintiff made no allegation of race discrimination. On June 16, 2025, Plaintiff filed her First Amended Complaint, adding a claim for sexual harassment under the Texas Labor Code. ECF No. 4. Yet again, Plaintiff made no allegation of race discrimination. On August 6, 2025, Plaintiff's counsel conferred with defense counsel regarding Plaintiff's motion for leave to amend her complaint to add a race-based hostile work environment claim, and the undersigned communicated Defendants' opposition to such an amendment. *See* Ex. B. On August 12, 2025, Plaintiff responded to Defendants' further attempt to conference by stating, "Is the pope Catholic? ☺" and reaffirmed that she would still be seeking to add a race-based hostile work environment claim. *Id.* On September 19, 2025, Plaintiff filed her Second Amended Complaint alleging, for the first time, that Defendants subjected her to a hostile work environment based on race in violation of 42 U.S.C. § 1981. ECF No. 29, ¶¶ 95-109.

## II.    ARGUMENT & CITATION TO AUTHORITY

### A.    Legal Standard

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (citation omitted). In short, it "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Id.* This is a "nondelegable responsibility." *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989). Rule 11(b)(2) requires attorneys presenting legal filings to the Court to certify that "the claims, defenses, and other legal contentions are warranted by existing law or by

a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." An attorney's subjective good faith is no shield against Rule 11 sanctions. *Jenkins v. Methodist Hosps. of Dall., Inc.*, 478 F.3d 255, 264 (5th Cir. 2007) (citation omitted).

Before filing any documents, an attorney must (1) reasonably inquire into the facts supporting it, (2) reasonably inquire into the law "such that the document embodies existing legal principles or a good faith argument," and (3) refrain from filing documents "for purposes of delay, harassment, or increasing costs of litigation." *Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 873-74 (5th Cir. 1988). This is an affirmative duty, and compliance is measured at the time the document is signed. *Stanley v. Univ. of Tex. Med. Branch*, 296 F. Supp. 2d 736, 738 (S.D. Tex. 2003) (citing *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994)). This evaluation is to be an objective one, measured against the standard of reasonableness under the circumstances. *Id.; Thomas*, 836 F.2d at 873. "Indicia of reasonable inquiry into the law include the plausibility of the legal theory espoused and the complexity of the issues raised." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993). In other words, a legal argument violates Rule 11 when it is "unreasonable from the point of view both of existing law and of its possible extension, modification, or reversal." *Id.*

The requirements of Rule 11 are designed to reduce misuse and abuse of the litigation process. *See Stanley*, 296 F. Supp. 2d at 738, citing *Childs*, 29 F.3d at 1023. Simply put, Rule 11 "prohibits frivolous filings and the misuse of judicial resources to harass the opposing party." *Villar v. Crowley Mar. Corp.*, 780 F. Supp. 1467, 1486 (S.D. Tex. 1992).

If, after notice and a reasonable opportunity to respond, the Court determines that Plaintiff violated Rule 11(b), the Court may impose an appropriate sanction. FED. R. CIV. P. 11(c). Sanctions are appropriate under Rule 11(b)(2) when a party advocates a legal contention that is

objectively unreasonable. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016); *Symbology Innovations, LLC v. Valve Corporation*, 2025 WL 364075, *4–*5 (E.D. Tex. 2025). Subject to certain exceptions not relevant here, the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation. FED. R. CIV. P. 11(c)(2).

### B.    Plaintiff's Cause of Action for Hostile Work Environment Based on Race is Objectively Unreasonable and Baseless

Plaintiff's race-based hostile work environment claim is implausible, unwarranted by existing law, and objectively unreasonable. Plaintiff's race-based hostile work environment claim alleges that Defendants violated 42 U.S.C. § 1981 because, on one occasion, "Judd Stone told Plaintiff that she is 'white trash' because she was wearing turquoise earrings." ECF No. 29, ¶ 98. This claim is legally baseless. Plaintiff alleges, with no supporting legal authority, that "[a] single incident of harassment, if sufficiently severe, can be enough to establish a hostile work environment. Examples of severe incidents include the use of a racial slur directed at the employee." ECF No. 29, ¶ 103. To the contrary, it is well established under controlling Fifth Circuit precedent that even more severe racially charged incidents than the one at issue here, in isolation, are insufficient to create a hostile work environment. *See, e.g., Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 287 (5th Cir. 2015) (concluding at the summary judgment stage that the plaintiff's claims that his supervisor used a racial slur twice, said he would not hire from a university he deemed a "black school" that did not produce engineers with the skills the company needed, and "said dealing with African-Americans is 'difficult' because they 'rip you off'" amounted to offensive comments but were "not severe or pervasive enough to have created a

hostile work environment"); *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1067 (5th Cir. 2023) (finding that two incidents where a black plaintiff was called a "lazy boy" and was told that "you people always want something for free," although historically used in demeaning ways towards black men, were insufficiently severe to establish a hostile work environment); *Hernandez v. Yellow Transp. Inc.*, 670 F.3d 644, 652 (5th Cir. 2012) (holding that a plaintiff being called a racially derogatory term and seeing a poster or letter that was derogatory about Hispanics was not sufficient to support a hostile work environment claim). The Fifth Circuit has affirmed the dismissal of a race-based hostile work environment claim where a plaintiff's supervisor made three derogatory comments to him, including one instance in which the supervisor shouted at plaintiff that he was "f----- lazy white trash" because "[s]uch isolated incidents do not support a hostile work environment claim." *Keel v. Wal-Mart Stores, Inc.*, No. 1:11-CV-248, 2012 WL 3263575, at *15 (E.D. Tex. July 17, 2012), *report and recommendation adopted*, No. 1:11-CV-248, 2012 WL 3262882 (E.D. Tex. Aug. 9, 2012), *aff'd*, 544 F. App'x 468 (5th Cir. 2013). These holdings conclusively foreclose Plaintiff's race-based hostile work environment claim.

Defendants alerted Plaintiff to this fatal deficiency in their opposition to her Motion for Leave to Amend. *See* ECF No. 20. Based on this, at the time Plaintiff's counsel signed the Complaint, counsel either knew, or should have known, that Plaintiff's claim has no reasonable chance of success. In light of well-established precedent, Plaintiff's claim based on one isolated remark is made in bad faith.

### C.    Plaintiff's Attempt to Equate the Phrase "White Trash" with the N-Word is A False Equivalence, Unsupported by Controlling Precedent

In defense of her race-based harassment claim, Plaintiff attempts to equate the facts of this case with those involving African American employees subjected to the N-word and other egregious anti-Black conduct in the workplace by their white colleagues. Plaintiff's argument, that

a white supervisor referring to a white employee's turquoise earrings as being "white trash" on one occasion, is the same as a white supervisor referring to a black employee as a "Lazy Monkey A** Ni****" is a false equivalence, deeply offensive, and unsupported by controlling precedent. The facts at issue here do not bear any resemblance to the "isolated incidents" that federal courts have deemed sufficient to result in a hostile work environment. Plaintiff's attempt to equate these two terms trivializes centuries of systemic racial oppression and the recognized harm specifically associated with the use of the N-word under federal law. The N-word is not just an insult; it is a weapon forged in the era of slavery and wielded for centuries to enforce racial hierarchy and to justify lynching, segregation, and systemic oppression. The term "white trash" does not carry that legacy. It is a class-based expression aimed at poverty, not race, which Plaintiff implicitly admits by alleging that "'White trash' is a derogatory racial term *used to refer to Caucasians of low economic means from rural areas; Plaintiff lives in Bastrop*." ECF No. 29, ¶ 99 (emphasis added). It never fueled an entire system of oppression. It isn't tied to centuries of systemic violence. Equating the two erases the reality of racial terror and minimizes the generational trauma inflicted on Black communities.

As the Fifth Circuit has explained, "perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the N-word] by a supervisor in the presence of his subordinates." *Woods*, 29 F.4th at 285 (internal quotations omitted). Addressing the severity of the offensiveness associated with this racial epithet, the Court observed that, "[t]he N-word has been further described as 'a term that sums up ... all the bitter years of insult and struggle in America, [a] pure anathema to African-Americans, [and] probably the most offensive word in English.'" *Id.* (quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (Kavanaugh, J., concurring)). The *Woods* court went on to conclude that the incident pleaded by the plaintiff,

specifically the use of the N-word, aptly described as "the most offensive word in English," by the plaintiff's supervisor and in front of his co-workers, states an actionable claim of hostile work environment. *Id.* at *2. Because this case does not involve the use of any such "unambiguously racial epithet," much less the uniquely abhorrent and offensive racial slur at issue in *Woods*, the Fifth Circuit's decision in that case does not support Plaintiff's position here.

The remaining cases Plaintiff points to in support of her Section 1981 claim are similarly distinct:

- *Henry v. Corpcar Servs. Houston, Ltd.*, 625 F. App'x 607, 617 (5th Cir. 2015) (per curiam) (on Juneteenth, a company's supervisors held a mandatory employee event, in which they hired a white woman in a gorilla suit who "touched [African American] employees and sat in their laps while making comments that were both sexually suggestive and racially degrading").

- *Harvill v. Westward Comm's, L.L.C.*, 433 F.3d 428, 435 (5th Cir. 2005) (during a seven-month period, plaintiff alleged that her supervisor "grabbed her and kissed her on the cheek, popped rubber bands at her breasts, fondled her breasts 'numerous times,' patted her on her buttocks 'numerous times,' and came behind her and rubbed his body against her").

- *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (during a four-month period, harassment was pervasive where plaintiff's supervisor "called her ten to fifteen times a night," invited plaintiff to "snuggle" in Las Vegas, grabbed plaintiff's handcuff case, which she wore on her belt, and pulled her to him so that her lower back touched his stomach before she jerked away from him, and made repeated requests to get coffee after work).

- *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 575, 577 (D.C. Cir. 2013) (hostile work environment claim based on one incident in which plaintiff alleged he had a heated argument that ended with a vice president yelling "Get out of my office [N-word]" and one incident in which plaintiff's supervisor said to him, "For a young black man smart like you, we are happy to have your expertise; I think I'm already paying you a lot of money.").

The isolated *single* incident at issue in this case, that Defendant Stone referred to Plaintiff's turquoise earrings as "white trash," is nothing more than "simple teasing" and does not amount to the "extremely serious" nature of those isolated incidents previously held to give rise to a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("A recurring point in these opinions is that "simple teasing," [] offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment."

(internal citation omitted)). This Court should reject Plaintiff's offensive attempt to undermine the integrity of Section 1981 by perverting its purpose.[3]

### D.     Plaintiff's Counsel Violated Rule 11(b)(2) by Knowingly Proceeding with a Baseless Claim

As shown above, even a cursory review of relevant authority under Title VII and Section 1981 reveals that Plaintiff's claim is foreclosed. Indeed, Defendants found no Fifth Circuit authority showing that a plaintiff has ever succeeded on facts similar to those alleged by Plaintiff: a *white* supervisor being found to have created a race-based hostile work environment for a *white* employee solely based on one instance of uttering the term "white trash." Given the clear weight of authority and the relevant facts, "there exists no conception of reasonableness that would justify" Plaintiff's race-based hostile work environment claim, from a factual or legal standpoint. *Stanley*, 296 F. Supp. 2d at 739 (citing *Childs,* 29 F.3d at 1024 (5th Cir. 1994)). Accordingly, by signing the Complaint, Plaintiff's counsel knowingly proceeded with a baseless claim, in violation of Rule 11(b)(2).

Even if, *for argument's sake*, Plaintiff's counsel believed that Plaintiff's claim was viable at the time counsel signed the Second Amended Complaint, any continued advocacy by Plaintiff's counsel violates Rule 11 now that counsel is alerted to the relevant authority.

Because controlling Fifth Circuit precedent establishes that Plaintiff's race-based hostile work environment claim is legally frivolous, sanctions are appropriate. *See, e.g., Stanley*, 296 F. Supp. 2d at 740 (S.D. Tex. 2003) (imposing Rule 11 sanctions for plaintiff's "manifest disregard

---

[3] The drafters of the Civil Rights Act of 1866, the statutory precursor to Section 1981, sought to combat forms of quasi-slavery (namely, the draconian "Black Codes" enacted by Southern state legislatures) by safeguarding fundamental rights such as the freedom to contract. *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 441 n.78 (1968); *Tillman v. Wheaton-Haven Recreation Ass'n*, 410 U.S. 431, 439 (1973) (holding that the Civil Rights Act of 1866 provided the operative language of §§ 1981 and 1982); Civil Rights Act of 1866, ch. 31, § 1, 14 Stat. 27 (codified as amended at 42 U.S.C. §§ 1981- 1983).

for the law" where plaintiff asserted a race-based hostile work environment claim based on "one racially derogatory word," because the jurisprudence in this Circuit is unmistakably clear that this solitary and contextually explainable use of otherwise offensive language is clearly not grounds for a viable Title VII claim."); *Symbology Innovations, LLC*, 2025 WL 364075, *4–*5 (imposing Rule 11 sanctions where plaintiff's counsel repeated legal contentions in the third amended complaint "in the face of [defendant] providing clear case law explaining why these allegations were legally frivolous[.]").

### E.    Defendants are Entitled to Recover Reasonable Attorneys' Fees and Expenses Resulting from Opposing Counsel's Rule 11 Violation

As a sanction for violating Rule 11, a court can issue "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation[,]" provided that this sanction is "warranted for effective deterrence[.]" *See* FED. R. CIV. P. 11(c)(4). The conduct of Plaintiff's counsel warrants an order requiring them to pay Defendants an amount equal to the reasonable attorneys' fees and other expenses that Defendants incurred in defending against Plaintiff's frivolous claim, including research, preparing, and filing this Motion.

Defendants respectfully submit that only a significant monetary penalty, corresponding to the measure of damage imposed on Defendants by Plaintiff's counsel's reckless disregard for the law, would constitute an effective deterrence to future such violations of Rule 11.

### III.    CONCLUSION

Defendants respectfully request that the Court grant their Rule 11 Motion for Sanctions and issue an order dismissing Plaintiff's Section 1981 claim and directing Plaintiff's counsel to pay Defendants an amount equal to Defendants' reasonable attorneys' fees and expenses incurred in litigating the aforementioned claim and in preparing and litigating this Motion. Defendants will

provide documentation of their reasonable attorneys' fees and expenses upon the Court's entry of

such an order.

Dated: February 18, 2026                    Respectfully submitted,


                                            /s/ Melinda J. Wetzel
                                            Kimberly R. Miers
                                            Texas State Bar No. 24041482
                                            kmiers@littler.com
                                            Melinda J. Wetzel
                                            Texas State Bar No. 24115637
                                            mwetzel@littler.com
                                            LITTLER MENDELSON, P.C.
                                            100 Congress Avenue, Suite 1400
                                            Austin, Texas 78701
                                            512.982.7250
                                            512.982.7248 (Fax)

                                            **ATTORNEYS FOR DEFENDANTS**


## CERTIFICATE OF CONFERENCE

I hereby certify that defense counsel attempted to confer with Plaintiff's counsel in good faith regarding the issues addressed in this Motion by letter dated October 21, 2025 ("Defendants' First Rule 11 Letter"). On November 7, 2025, Plaintiff's counsel responded to Defendants' First Rule 11 Letter refusing to withdraw her Section 1981 claim. Defense counsel further attempted to confer with Plaintiff's counsel in good faith regarding the issues addressed in this Motion by letter on December 29, 2025 ("Defendants' Second Rule 11 Letter"), which enclosed this Motion. To date, Plaintiff's counsel has not responded to Defendants' Second Rule 11 Letter, and no agreement could be made.

                                            /s/ Melinda J. Wetzel
                                            Melinda J. Wetzel

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2026, the foregoing was electronically filed in the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to the following:

Emily Frost
Frost Domel PLLC
2499 S. Capital of Texas Hwy.
Suite B-203
Austin, Texas 78746
emily@frostdomel.com

Michael E. Lovins
Lovins Law
1301 S. Capital of Texas Hwy., A-136
Austin, Texas 78746
michael@lovinslaw.com

**_Attorneys for Plaintiff_**

_/s/ Melinda J. Wetzel_
Kimberly R. Miers
Melinda J. Wetzel