UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JORDAN ESKEW,<br>        Plaintiff<br><br>v.<br><br>STONE HILTON PLLC,<br>CHRISTOPHER HILTON, AND JUDD STONE,<br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    Case No. 1:25-cv-00804-ADA |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR SANCTIONS**

TO THE HONORABLE U.S. DISTRICT COURT JUDGE:

Plaintiff Jordan Eskew files this response to Defendants' motion for judgment on the pleadings and motion for sanctions and would respectfully show the Court as follows:

### Introduction

1. Defendants have a filed a motion for judgment on the pleadings on Plaintiff's claim for racial harassment under section 1981 (doc. 62) and motion for sanctions against Plaintiff's counsel on the same basis (doc. 71).

2. Both of these motions are without merit or even a good faith basis.

3. With this response, Plaintiff provides both argument and evidence to support her claim for racial harassment under section 1981. Therefore, pursuant to Federal Rule of Civil Procedure 56(f), Plaintiff asks the Court to construe Defendants' motion for judgment on the pleadings as a motion for summary judgment and deny it. Plaintiff also asks the Court to deny Defendants' motion for sanctions.

### Facts and Summary of Argument

4. Stone Hilton PLLC attempted to create a lawless workplace where supervisors were free to engage in harassment of all kinds, racial and otherwise. Exh. 1. Instead of providing any anti-harassment training or establishing any oral or written policy prohibiting harassment or way to report harassment, supervisor and

owner of the firm Judd Stone established a policy *encouraging* harassment, telling the employees of Stone Hilton PLLC: "At this firm, there are no rules. You can say whatever slurs you want." *Id.*

5. One can see the hostile work environment based on race in Christopher Hilton's text stating that he wanted to "Jew them [Stone Hilton employees] out of health insurance and other similar things" (Exh. 2, Collins 018 – last page) and in Plaintiff's former co-worker Amy Hilton's refusal to answer Plaintiff's question: "Q: Did you ever witness Judd Stone [making] comments of a racial nature?" at deposition for fear she would be sued by Defendants for breach of her non-disparagement agreement. Exh. 3, 108:9–109:3; 142:20–25. (Amy Hilton's refusal to answer this question should be construed as unfavorable to Defendants.)

6. Also consistent with the policy encouraging harassment, Judd Stone called his subordinate Jordan Eskew "white trash," a racial slur, in front of her other supervisor, Christopher Hilton, who did nothing to stop Stone or correct him. Exh. 1. As a result of this racial slur, Plaintiff felt humiliated, degraded, and made to feel "less than." *Id.* Because there was no way to report the harassment or seek recourse (to the contrary, the stated policy was "In this firm, there are no rules. You can say whatever slurs you want"), Ms. Eskew felt trapped in an unsafe work environment. *Id.* She felt verbally abused, afraid, and forced to be hypervigilant. *Id.* Defendants' conduct made it hard for her to concentrate at work, as she was constantly bracing for whatever harassment or screaming or other hostile behavior came next. *Id.* For this reason, she preferred (and looked for any reason) to run errands outside the firm, away from Stone and Christopher Hilton, rather than work in the office. *Id.*

7. Despite these facts, Defendants ask the Court to dismiss Plaintiff's section 1981 claim because (1) according to Defendants, white supervisors are free to racially harass white subordinates; and (2) there was only one instance of Plaintiff's supervisor Judd Stone calling his subordinate Jordan Eskew a racial slur in front of Ms. Eskew's other supervisor Christopher Hilton. In other words, according to Defendants, where both the supervisor and the subordinate share the same race, supervisors are free to racially harass their subordinates, just like Stone and Christopher Hilton racially harassed Ms. Eskew, and no racial harassment laws apply. Alternatively, Defendants argue, if racial harassment laws apply, every supervisor should get one free racial slur against a subordinate, including and especially in a workplace like Stone Hilton PLLC, *which*

*was set up by racially harassing supervisors Stone and Christopher Hilton not to prohibit but to encourage racial slurs*.

8. Although a lawless workplace where supervisors are free to racially harass their subordinates, or, in the alternative, get one free racial slur against a subordinate, is Defendants' dream, and what they attempted to create at Stone Hilton PLLC, it is not lawful. Plaintiff asks the Court to reject this nonsense.

### Evidence Offered in Support of Plaintiff's Response

9. In support of her response, Plaintiff offers the following evidence, all of which is attached and incorporated by reference:

   (1) Exhibit 1     Declaration of Jordan Eskew

   (2) Exhibit 2     Texts produced by Allison Collins

   (3) Exhibit 3     Excerpts from Amy Hilton's deposition

   (4) Exhibit 4     Plaintiff's TWC Charge

### Argument and Authorities

10. Section 1981 prohibits an employer from creating a hostile work environment based on race. 42 U.S.C. § 1981. *See, e.g., Smith v. P.A.M. Transport, Inc.*, 154 F.4th 375, 383–84 (6th Cir. 2025) (finding supervisor's use of terms "monkey" and "monkey ass" toward African-American employees to be evidence of race-based harassment); *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 526 (8th Cir. 2019) (where employer never intervened to stop manager's racial slurs and took no action to discipline manager or prevent further harassment, and employer lacked any formal or informal policy prohibiting workplace discrimination, punitive damages were warranted).

11. One instance of a supervisor calling an employee a racial slur is enough to state an actionable hostile work environment. *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (one instance of supervisor calling employee a "Lazy Monkey A** N * * * *" was enough to state an actionable hostile work environment claim); *see also Ayishi-Etoh v. Fannie Mae*, 712 F.3d 572, 575, 577 (D.C. Cir. 2013) (single incident in which plaintiff alleged he and his supervisor had heated argument that ended with his supervisor yelling "Get

out of my office n*****" might well have been sufficient to establish a hostile work environment"); *id.* at 580 (Kavanaugh, J., concurring) ("[I]n my view, being called the n-word by a supervisor—as [plaintiff] alleges happened to him—suffices by itself to establish a racially hostile work environment.").

12.  To establish a prima facie claim of race-based harassment under section 1981, a plaintiff must show: (1) she is a member of a protected group; (2) she was the victim of uninvited harassment; (3) the harassment was based on race; and (4) the harassment affected a term, condition, or privilege of employment. *Davis v. Tex. Children's Hosp.*, 2018 WL 11469749, 2018 WL 11469749, at *3 (S.D. Tex. May 15, 2018) (not selected for publication); *see also* Pattern Jury Instructions (Civil Cases), Fifth Circuit District Judges Association, Instruction No. 11.2 (2020).

13.  Plaintiff has not only alleged but provided evidence of each of these elements. As set out in the declaration attached and incorporated by reference as Exhibit 1, (1) Plaintiff is white; (2) around July 17, 2023, she was subjected to unwelcome harassment; (3) the harassment was based on her race. Specifically, while working at the Stone Hilton PLLC office, one of her supervisors and owner of the firm Judd Stone called her "white trash," a racial slur, because she was wearing turquoise earrings. This racial slur occurred in front of her other supervisor and owner of the firm Christopher Hilton, who did nothing to correct Stone or stop him; (4) as a result of this racial slur, Plaintiff felt humiliated, degraded, and made to feel "less than." Exh. 1. Because there was no way to report the harassment or seek recourse (to the contrary, the stated policy was "In this firm, there are no rules. You can say whatever slurs you want"), she felt trapped in an unsafe work environment. *Id.* She felt verbally abused, afraid, and forced to be hypervigilant. *Id.* Defendants' conduct made it hard for her to concentrate at work, as she was constantly bracing for whatever harassment or screaming or other hostile behavior came next. *Id.* For this reason, she preferred (and looked for any reason) to run errands outside the firm, away from Stone and Christopher Hilton, rather than work in the office. *Id.*

14.  Defendants ask the Court to dismiss Plaintiff's section 1981 claim because, according to Defendants, it is lawful for white supervisors to racially harass white subordinates. In other words, according to Defendants, where both the supervisor and the subordinate are white (or black, or Hispanic, or Asian),

supervisors are free to racially harass their subordinates, just like Stone and Christopher Hilton racially harassed Plaintiff, and no racial harassment laws apply.

15. No caselaw supports Defendants' argument. Such a holding would give black supervisors *greater* responsibilities than white supervisors not to harass white subordinates and would give white subordinates *lesser* rights than black subordinates not to be harassed by white supervisors in violation of section 1981, which provides that, "All persons within the jurisdiction of the United States shall have the *same right* to make and enforce contracts . . . ." 42 U.S.C. § 1981 (emphasis added); *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285–87 (section 1981 proscribes racial discrimination in employment against whites on the same terms as racial discrimination against nonwhites). Under section 1981, a person's right to be free from racial harassment in the workplace does not depend on whether she and her supervisor share the same race. *See McDonald,* 427 U.S. at 285–87 (white supervisor who fired two white employees could be held liable for race discrimination under section 1981).

16. Alternatively, Defendants ask the Court to dismiss Plaintiff's section 1981 claim because there was only one instance of Plaintiff's supervisor Judd Stone calling Plaintiff a racial slur in front of Plaintiff's other supervisor Christopher Hilton. Exh. 1. In other words, Defendants argue, if racial harassment laws apply, every supervisor should get one free racial slur against a subordinate, including and especially in a workplace like Stone Hilton PLLC, which was *set up by racially harassing supervisors Stone and Christopher Hilton not to prohibit but to encourage racial slurs*. *Id.*

17. Although Plaintiff herself was subjected to a racial slur by Stone on only one occasion, this case cannot properly be considered a case of only one instance of racial harassment by Stone and Christopher Hilton. First, like the employer in *Bryant*, Stone Hilton PLLC failed to provide any anti-harassment training or establish any written or oral policy prohibiting harassment or way to report harassment. Exh. 1. Quite the opposite: by telling the employees of Stone Hilton PLLC: "At this firm, there are no rules. You can say whatever slurs you want," Defendants established a policy *encouraging* harassment of all kinds, including racial slurs. *Id*.

18. Second, consistent with the stated policy encouraging harassment, racial and otherwise, Christopher Hilton sent a text to employees of Stone Hilton PLLC stating that he wanted to "Jew them [Stone Hilton employees] out of health insurance and other similar things. . . ." Exh. 2, Collins 018 (the Bates numbers are difficult to read, but it is the last page of Exhibit 2).

19. Third, the Court should assume that Stone engaged in multiple acts of racial harassment, as during the deposition of Amy Hilton, Ms. Hilton refused to answer Plaintiff's question: "Q: Did you ever witness Judd Stone [making] comments of a racial nature?" for fear she would be sued by Defendants for breach of her non-disparagement agreement. Exh. 3, 108:9–109:3; 142:20–25 ("[C]ounsel for defendants, Gaines West did, in fact, threaten me, Joe, Katie, and Allison with potential breach in response to Jordan's lawsuit. So, I would like for that to be clear, that my fears about defendants' actions after this deposition in response to my truthful testimony is well-founded."). In her lawsuit, Plaintiff did not allege that Amy Hilton was present when she was subjected to the racial slur by Stone. Doc. 29 at para. 26. Further, as established by Plaintiff's declaration, Amy Hilton was not present when Plaintiff was subjected to a racial slur by Stone. Exh. 1. Therefore, when Amy Hilton refused to testify about Stone's racial comments, she could not have been referring to the racial slur inflicted on Plaintiff by Stone because she was not there. Exh. 1. She must have been referring to other racial comments by Judd Stone.

20. Finally, Defendants subjected Plaintiff to the racial slur described in paragraph 11 above.

21. Even if this case could properly be considered a case of only one instance of racial harassment, which it cannot, caselaw fails to support Defendants' argument that one instance is not enough. To the contrary, both the US Supreme Court and the Fifth Circuit have held that an isolated incident can produce a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (an isolated incident, if "extremely serious," can produce a hostile work environment); *Henry v. Corpcar Servs. Houston*, Ltd., 625 F. App'x 607, 617 (5th Cir. 2015) (per curiam) (affirming award of damages for hostile work environment claim involving a single incident of racial harassment); *see also Harvill av. Westward Comm's, L.L.C.*, 433 F.3d 428, 435 (5th Cir. 2005) (conduct need not be both severe and pervasive to be actionable under Title

VII: "The Supreme Court has stated that isolated incidents, if egregious, can alter the terms and conditions of employment."); *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) ("An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment.").

22. In fact, the Fifth Circuit has found that one instance of a supervisor calling an employee a racial slur is enough to state an actionable hostile work environment. *Woods*, 29 F.4th at 285 (one instance of supervisor calling employee a "Lazy Monkey A** N * * * *" was enough to state an actionable hostile work environment claim); *see also Ayishi-Etoh*, 712 F.3d at 575, 577 (D.C. Cir. 2013) (single incident in which plaintiff alleged he and his supervisor had heated argument that ended with his supervisor yelling "Get out of my office n*****" might well have been sufficient to establish a hostile work environment"); *id.* at 580 (Kavanaugh, J., concurring) ("[I]n my view, being called the n-word by a supervisor—as [plaintiff] alleges happened to him—suffices by itself to establish a racially hostile work environment.").

23. The fact that Plaintiff has not found a race-based harassment case under section 1981 where a subordinate was called "white trash" and not the "n word," in a workplace like this one, in which all manner of slurs were *encouraged*, is not determinative. Nor is it surprising. Plaintiff would be surprised to find a case with this fact pattern, as it would require an employer as malicious or as reckless as Stone Hilton PLLC.

24. The unpublished report and recommendation of the United States magistrate judge in the Eastern District of Texas cited by Defendants, *Keel,* dated a decade prior to and therefore issued without the benefit of the Fifth Circuit's ruling in *Woods,* found the "white trash" comments to be "race-based harassment" but not "part of a pattern of disability or race-based harassment." *Keel v. Wal-Mart Stores, Inc.*, No. 1:11-CV-248, 2012 WL 3263575, at *15 (E.D. Tex. July 17, 2012) (not selected for publication), report and recommendation adopted, No. 1:11-CV-248, 2012 WL 3262882 (E.D. Tex. Aug. 9, 2012) (also not selected for publication), *aff'd*, 544 F. App'x 468 (5th Cir. 2013) (per curiam). But as established by the Supreme Court and Fifth Circuit in cases like *Faragher*, *Henry, Harvill,* and *Lauderdale*, a pattern of race-based harassment is not required; therefore, *Keel* deviates from established Supreme Court and Fifth Circuit precedent and should not be relied upon.

25. Nor should the *Shofield* opinion from the district court of Utah in 2014 be relied upon. Not only is it not controlling precedent in the Fifth Circuit, it addressed sex-based, not race-based, harassment and so does not apply. *Shofield v. Maverik Country Store*, 26 F. Supp. 3d 1147, 1158 (D. Utah 2014).

26. Nor does the *Hernandez* case cited by Defendants provide authority for their argument, as there is no indication that either plaintiff in that case was called a racial slur by a supervisor, as is the case here. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 652, 655 (5th Cir. 2012) ("Hernandez was called a racially derogatory term on one occasion [court does not indicate that it was by a supervisor] . . . . Kettner describes an incident in which a supervisor explained, using a racial slur, that he liked NASCAR because African–Americans do not. Kettner, who described the statement as an off-the-wall comment, does not explain how the statement harassed him.").

27. Nor does the *Price* case cited by Defendants provide authority for their argument, as there is no indication that the plaintiff in that case was called a racial slur by a supervisor, as is the case here. *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1067 (5th Cir. 2023) ("lazy boy" and "you people always want something for free" were insufficiently severe to be considered racial harassment).

28. As determined by the Fifth Circuit in 2022, one racial slur by a supervisor is enough to constitute racial harassment *Woods*, 29 F.4th at 285 (one instance of supervisor calling employee a "Lazy Monkey A** N * * * *" was enough to state an actionable hostile work environment claim); *see also Ayishi-Etoh*, 712 F.3d at 575, 577 (single incident in which plaintiff alleged he and his supervisor had heated argument that ended with his supervisor yelling "Get out of my office n*****" might well have been sufficient to establish a hostile work environment"); *id.* at 580 (Kavanaugh, J., concurring) ("[I]n my view, being called the n-word by a supervisor—as [plaintiff] alleges happened to him—suffices by itself to establish a racially hostile work environment.").

29. According to Defendants, "white trash" is not as racially harassing as the "n word." This contention, for which Defendants cite no authority, is without merit. To conclude as much would be to give more weight to racial slurs against blacks than racial slurs against whites in violation of section 1981. 42 U.S.C. § 1981

("All persons within the jurisdiction of the United States shall have the *same right* to make and enforce contracts . . . .") (emphasis added); *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285–87 (section 1981 proscribes racial discrimination in employment against whites on the same terms as racial discrimination against nonwhites).

30. Although a lawless workplace where supervisors are free to racially harass their subordinates, or, in the alternative, get one free racial slur against a subordinate, is Defendants' dream, and what they attempted to create at Stone Hilton PLLC, it is not lawful. Plaintiff asks the Court to reject this nonsense.

31. These other statements by Defendants in their motion for judgment on the pleadings (doc. 62) are also worth correcting:

 (a) Defendants allege "Plaintiff's [TWC] Charge does not include any allegation of race discrimination." Doc. 62, p. 2. This statement is misleading. As illustrated by Exhibit 4, attached and incorporated by reference, Ms. Eskew did allege, in her TWC Charge, that she was called "white trash" by Stone. Exh. 4. However, because the TWC is not authorized to investigate claims of racial harassment under section 1981, and because Stone Hilton PLLC did not have the requisite number of employees to be an "employer" under Title VII, in her TWC Charge, Plaintiff did not and could not have alleged a claim of racial harassment against Stone Hilton PLLC.

 (b) Defendants falsely characterize Plaintiff's section 1981 claim as "a single comment about earrings." Doc. 62, p. 3. That is not Plaintiff's allegation. Plaintiff alleges that Stone called her "white trash," a racial slur. Exh. 1; doc 29, para. 26.

 (c) To support Defendants' contention that it is lawful for supervisors to racially harass subordinates of the same race, they cite several cases: *McMichael, Kelly, Donald,* and *Thomas.* None of these are harassment cases; they are all termination cases. Please see *Davis, supra*, and the Pattern Jury Instructions (Civil Cases), Fifth Circuit District Judges Association, Instruction No. 11.2 (2020), both cited above, for the requirements to prove racial harassment.

### **Request for Relief**

For these reasons, Plaintiff respectfully requests that the Court construe Defendants' motion for judgment on the pleadings on Plaintiff's racial harassment claim under section 1981 as a motion for summary judgment and deny it. Plaintiff further asks the Court to deny Defendants' motion for sanctions. Plaintiff further requests all other just relief.

Respectfully Submitted,

**FROST DOMEL PLLC**

*/s/ Emily Frost*
Emily Frost
State Bar No. 24036601
emily@frostdomell.com
2499 S. Capital of Texas Highway
Suite B-203
Austin, Texas 78746
Tel: (512) 640-5501

**LOVINS TROSCLAIR, PLLC**

Michael E. Lovins
State Bar No. 24032555
Michael@LovinsLaw.com
1301 S. Capital of Texas Highway
Suite A136
Austin, Texas 78746
Tel: (512) 535-1649
Fax: (214) 276-1475

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was delivered via e-service to all counsel of record on this 23rd day of February, 2026.

*/s/ Emily Frost*
Emily Frost